IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-03400-STV

JANE ROE,

    Plaintiff,

v.

COLORADO JUSTICE DEPARTMENT, a division of the state of Colorado;
BRIAN BOATRIGHT, individually, and in his official capacity as a Chief Judge of the Colorado Supreme Court;
BYRON LARGE, individually, and in his capacity as a Presiding Disciplinary Judge of the Colorado Supreme Court;
JESSICA YATES, individually, and in her official capacity as Attorney Regulation Counsel of the Colorado Supreme Court;
JACOB VOS, individually, and in his official capacity as Assistant Regulatory Counsel of the Colorado Supreme Court;
RHONDA WHITE MITCHELL, individually, and in her official capacity as Senior Assistant Regulation Counsel of the Colorado Supreme Court; and
CHERYL STEVENS, individually, and in her official capacity as Clerk of the Colorado Supreme Court,

    Defendant(s).

**Objection to Motion for Leave to Restrict**

**Summary of Argument**

The Colorado Freedom of Information Coalition and Eugene Volokh object to Roe's Motion for Leave to Restrict, under D.C.COLO.LCivR 7.2(d) ("Any person may file an objection to the motion to restrict no later than three court business days after posting.").

1. In *Coe v. U.S. Dist. Ct. for Dist. of Colorado*, 676 F.2d 411 (10th Cir. 1982), this Court generally concluded that pseudonymous challenges to professional disciplinary proceedings are improper. And that is just a special case of the principle that parties are expected to litigate in their

own names, so that the public can better understand and supervise the behavior of the judicial system. *See* Part I below.

2. That is especially important in cases such as this one, where meaningfully reporting on the case would require knowing the plaintiff's identity. Plaintiff is claiming that she was mistreated in the attorney disciplinary process—but to evaluate that process one has to know her name, so as to find the decision explaining her disbarment and other decisions that provide a perspective on her alleged misbehavior. *See* Part II below.

3. Pseudonymity is especially inappropriate in cases, such as this one, where plaintiff has been accused of vexatious litigation practices. *See* Part III below.

4. Pseudonymity cannot be justified by "economic or professional concerns," *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989), such as the ones to which plaintiff points. *See* Part IV below.

5. Pseudonymity also cannot be justified by the *Erie* doctrine, because (a) this is predominantly a federal question case, (b) pseudonymity is a procedural matter rather than a substantive one, and (c) in any event, Colorado practice is to publicly identify attorneys who have been disbarred and the reasons for their disbarment, as apparently happened in this very case.

**Identity of Objectors**

The Colorado Freedom of Information Coalition (CFOIC) is a nonpartisan alliance of groups, news organizations, and individuals dedicated to ensuring the transparency of state and local governments in Colorado by promoting freedom of the press, open courts, and open access to government records and meetings. The CFOIC represents both individual and institutional members of the press, as well as advocacy groups for freedom of information and freedom of the press, that all

work toward ensuring the public is meaningfully informed about the activities of their government, including both state and federal courts in Colorado. A list of CFOIC's member organizations can be found at https://coloradofoic.org/about/.

Eugene Volokh is a Professor of Law Emeritus at UCLA School of Law, and a Senior Scholar at the Hoover Institution at Stanford University. He often writes about the legal issues involved in this case—alleged constitutional violations, defamation claims, pseudonymous litigation, and orders aimed at preventing defendants from identifying pseudonymous plaintiffs, see Mot. to Restrict 2 (stating that plaintiff "anticipates moving for a Protective Order later, requesting that Defendants be prohibited from disclosing Plaintiff's true identity and preserving the confidentiality of information"). *See, e.g.*, Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353 (2022); Eugene Volokh, *Media Outlets Forbidden from Identifying Recently Released Drug Cartel Ex-Boss as Plaintiff in Privacy Lawsuit*, Volokh Conspiracy (Reason) (Oct. 12, 2021), https://perma.cc/SS4V-AJAJ; Eugene Volokh, *Court Orders #MeToo Plaintiff Not to Mention Defendant's Name in Public*, Volokh Conspiracy (Reason) (Oct. 11, 2021), https://perma.cc/8Q86-G5PH.

To be able to write effectively about this case, CFOIC members and Volokh need the same sort of broad access that journalists, academics, and ordinary citizens routinely have to most cases—including the ability to identify the parties, to determine what other cases they have been involved in, and to otherwise research their past behavior and credibility.

# Argument

## I. Parties must generally litigate in their own names, including in challenges to professional discipline

*Coe* largely disposes of plaintiff's request to proceed under a pseudonym. In that case, this Court concluded that a doctor may not pseudonymously challenge state-run "professional disciplinary proceedings": "It is our view that by balancing the need advanced by [the plaintiff] to maintain individual and professional privacy rights against the right of the public to know all of the facts surrounding the formal proceedings posited with the Board, the privacy interest does not outweigh the public's interest." *Coe*, 676 F.2d at 412, 418. The same logic applies to plaintiff's attempt to pseudonymously challenge the outcome of her professional disciplinary proceedings.

And this conclusion in *Coe* is just an application of the general principle that "the public has an important interest in access to legal proceedings." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). "Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Id.* "The public has a legitimate interest in knowing the facts of this case and the parties involved." *Doe v. Wang*, No. 20-CV-02765-RMR-MEH, 2022 WL 89172, *5 (D. Colo. Jan. 6, 2022). In particular, in challenges to government action, "the prejudice to the public interest is clear, should the district court . . . allow[] plaintiff to proceed under a fictitious name. Plaintiff's claim to relief clearly involves the use of public funds, and the public certainly has a valid interest in knowing how state revenues are spent." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

Public access, including the norm of litigating under parties' own names, "allows the citizenry to monitor the functioning of our courts, thereby [e]nsuring quality, honesty and respect for our legal system." *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022) (citation omitted). "Pseudonymous

4

litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, . . . and disclosing the parties' identities furthers openness of judicial proceedings . . . ." *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (citations omitted). This right of public access "protects the public's ability to oversee and monitor the workings" of the legal system and "promotes the institutional integrity of the Judicial Branch." *Id.* at 263. This is important to "[p]ublic confidence in the judiciary," which "cannot long be maintained where important judicial decisions are made behind closed doors," "with the record supporting the court's decision sealed from public view." *Id.* (cleaned up).

And public monitoring and confidence are particularly important when a person is accusing state judicial actors of defamation and discrimination: The need for "[p]ublic confidence in the judiciary," *Public Citizen*, 749 F.3d at 263, is especially strong when a plaintiff alleges malfeasance by the judiciary itself. If a decision against Defendants is rendered "behind closed doors," with details about the plaintiff "sealed from public view," that would understandably increase public skepticism about the fairness of the process. *Id*.

## II.   Seeing plaintiff's past cases is necessary to understand this case

The value to public supervision of knowing the parties' names is especially clear in this case. Plaintiff's Complaint alleges, among other things, that defendants misbehaved with regard to her disciplinary process, and with regard to restricting Plaintiff from litigating *pro se*. *See, e.g.,* Compl. ¶¶ 86-90. If objectors or others want to write about the case in a way that adequately informs their readers, they need to read and quote the decisions explaining why plaintiff was disbarred and then forbidden from representing herself in Colorado courts.

They would also want to see whether there is reason to doubt plaintiff's allegations, such as because she had been found to have made frivolous claims in past cases. All those documents would be available by searching for plaintiff's name. But without knowing plaintiff's name, reporters, academics, and other commentators would be unable to find those documents, and would thus be unable to provide deep and informed coverage of this case.

Based on plaintiff's allegations in Compl. ¶ 90 ("in February 2024, the Supreme Court issued a decision barring Plaintiff from representing herself in any action in any state court in Colorado"), objectors believe they have identified plaintiff and have found a publicly available decision explaining her disbarment, the February 2024 decision itself, and various other decisions involving plaintiff. (They do not cite these decisions here to avoid rendering the pseudonymity issue moot before this Court can pass on it; if the Court prefers, objectors will provide citations to those decisions.) But objectors and others are entitled to *know* plaintiff's identity, and not just guess at it.

### III. Pseudonymity is especially inapt in cases involving potentially vexatious litigants

When plaintiff appears to be a potentially "vexatious litigant," "[t]his goes directly to Plaintiff's credibility." *Doe v. Wang*, No. 20-CV-02765-RMR-MEH, 2022 WL 89172, *5 (D. Colo. Jan. 6, 2022). "[T]he public" should not "be prevented from reaching its own conclusions in [the] case," informed by evidence of Plaintiff's possible vexatiousness. *Id.* Because of that, pseudonymity is especially inapt in such cases.

As plaintiff acknowledges, "in February 2024, the [Colorado] Supreme Court issued a decision barring Plaintiff from representing herself in any action in any state court in Colorado," Compl. ¶ 90. That sort of prohibition usually stems from a conclusion that plaintiff has behaved vexatiously

6

in past cases, and indeed the February 2024 decision labels plaintiff's behavior in past cases "frivolous" and "vexatious."

Moreover, letting plaintiff proceed pseudonymously here would make it harder for future courts and opposing parties to get a full picture of plaintiff's pattern of behavior, in considering whether she should likewise be forbidden from litigating in those jurisdictions: "[T]he public's right to know who is filing lawsuits" is important "for tracking vexatious litigants." *Smith v. Corizon Healthcare*, No. 1:16-cv-00461, 2016 WL 3538350, *3 (E.D. Cal. June 28, 2016), *report & recommendation adopted*, 2016 WL 4679712 (E.D. Cal. Sept. 7, 2016); *see also Doe v. Wash. Post Co.*, No. 12-cv-5054, 2012 WL 3641294, *1 n.1 (S.D.N.Y. Aug. 24, 2012) ("The Court cannot but construe the filing of this suit anonymously as an attempt to conceal Fisch's identity as a repeat vexatious filer within this and other districts."), *dismissed sub nom. Doe v. Republic of Poland*, 531 F. App'x 113, 116 (2d Cir. 2013); *Hernandez v. Bishara*, No. 15-cv-8556, 2016 WL 4534009, *1 (C.D. Cal. Aug. 30, 2016) ("Plaintiffs . . . may not seek to evade the vexatious litigant order by using pseudonyms or aliases."); *Nguyen v. Islamic Republic of Iran*, No. 2:21-cv-00134, 2021 WL 4173712, *2 (D. Nev. Sept. 13, 2021) ("To preserve his ability to file these frivolous lawsuits, Plaintiff has demonstrated a willingness to circumvent court-ordered prefiling injunctions through deception, such as by attempting to file cases anonymously as 'John Doe.'"); *Doe v. Law Offices of Andrew Weiss*, No. 19-cv-2119, 2020 WL 5983929, *2 (C.D. Cal. July 30, 2020) (noting "the Court's previous finding that Plaintiff seeks to file under a pseudonym to circumvent an existing pre-filing injunction").

**IV.   Risk to reputation does not suffice to justify pseudonymity**

For the reasons given above, pseudonymity is allowed only in "exceptional circumstances," *Femedeer*, 227 F.3d at 1246, for instance when the parties are minors, *see, e.g. Doe v. Woodard*, No. 15-cv-01165-KLM, 2015 WL 13848981, *2 (D. Colo. July 20, 2015). But plaintiff's concern "about acts of reprisal that could further damage her personal and professional reputation and future endeavors and inflict additional and severe financial and/or mental harm," Mot. to Restrict 2, does not qualify as such an "exceptional circumstance[]," *Femedeer*, 227 F.3d at 1246.

Pseudonymity cannot be justified by "economic or professional concerns." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989). "[F]ear of retaliation by [one's] employer doesn't meet [the] standard" for when pseudonymity is allowed. *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 n.10 (10th Cir. 2017). "That a plaintiff may suffer embarrassment or economic harm is not enough" to justify pseudonymity. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). That is equally true when the economic harm stems from "potential negative scrutiny from future employers." *D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016). And courts have expressly applied this reasoning to cases (such as this one) in which plaintiff alleges defamation:

> The allegations in defamation cases will very frequently involve statements that, if taken to be true, could embarrass plaintiffs or cause them reputation harm. This does not come close to justifying anonymity, however, and plaintiffs regularly litigate defamation claims on the public docket even when the allegedly defamatory statement could, if taken as true, cause them some reputation harm.

*Doe v. Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021); *see also Doe v. Roe*, No. 23-CV-01149-NYW-KLM, 2023 WL 4562543, *3 (D. Colo. July 17, 2023) (rejecting pseudonymity in a defamation case); *Doe v. Wash. Post Co.*, No. 1:19-cv-00477-UNA, 2019 WL 2336597, *1 (D.D.C.

Feb. 26, 2019) (likewise); *Roe v. Does 1-11*, No. 20-CV-3788-MKB, 2020 WL 6152174, *6 (E.D.N.Y. Oct 14, 2020) (likewise).

Indeed, many kinds of civil suits and criminal prosecutions (even beyond defamation lawsuits or disciplinary proceedings) routinely expose litigants to the likelihood of reputational harm. For example, civil defendants accused of sexual assault typically proceed publicly, even though identifying themselves as someone merely accused could be professionally ruinous. Yet,

> The supposed harm from being the target of a lawsuit alleging sexual abuse is not enough to justify shrouding this case with a veil of secrecy. . . . In nearly all civil and criminal litigation filed in the United States Courts, one party asserts that the allegations leveled against it by another party are patently false, and the result of the litigation may quickly prove that. However, if the purported falsity of the complaint's allegations were sufficient to seal an entire case, then the law would recognize a presumption to seal instead of a presumption of openness.

*Chalmers v. Martin*, No. 21-cv-02468-NRN, 2021 WL 6136179, *2-*3 (D. Colo. Dec. 28, 2021) (cleaned up).

> [I]t is difficult to see how defendant [who is being sued for alleged child molestation] has set himself apart from any individual who may be named as a defendant in a civil suit for damages. It seems to this court that any doctor sued for medical malpractice, any lawyer sued for legal malpractice, or any individual sued for sexual molestation can assert that the plaintiff's allegations will cause harm to his reputation, embarrassment and stress among his family members, and damage to his business as a result of the litigation.

*Doe v. Doe*, 668 N.E.2d 1160, 1167 (Ill. Ct. App. 1996). Despite the "reputational interest at stake" in such cases, defendants are "not entitled to the rare dispensation of anonymity." *Roe v. Doe*, 2019 WL 2058669, *5-*6 (D.D.C. May 7, 2019).

Plaintiffs in employment disputes may also often want to protect their professional reputation and employment prospects by using pseudonyms. For example, an employment discrimination plaintiff who alleges she was improperly fired might prefer to sue pseudonymously, fearing that suing publicly (1) would identify her as a litigious employee, and (2) would air the employer's

9

purported (but, she argues, pretextual) reasons for firing her. Yet despite these quite rational fears, employment discrimination plaintiffs are still required to proceed publicly. *See Southern Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (denying pseudonymity to plaintiffs, partly because they "face no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firm") (quoted favorably in *Coe*, 676 F.2d at 417).

Roe argues that pseudonymity is necessary "as the revelation of her identity would result in significant harm to Plaintiff, the exact type of harm she seeks to remedy by the commencement of this lawsuit." Mot. to Restrict 7. But, as in *Doe v. Wang*, Roe is not suing "to prevent the disclosure of [her] private matter; rather, [she] is suing for compensation for a disclosure that has already happened." 2022 WL 89172, *5 (cleaned up). Thus, this is not a case "where the injury litigated against would be incurred as a result of the disclosure of the [Doe's] identity," *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006), because she "seeks monetary compensation for a disclosure that has already occurred," *id.* at 812 n.2; *see also Doe v. F.B.I.*, 218 F.R.D. 256, 260 (D. Colo. 2003).

**V.     Pseudonymity is a procedural matter where federal courts should rely on federal law**

Roe argues that "the 'Erie Doctrine' and the Supremacy Clause require this Court to permit Plaintiff to proceed under a pseudonym because that is the only way to preserve and maintain the Colorado State Supreme Court's orders, rules, and procedures that make the disciplinary and disability cases unavailable to the general public." Mot. to Restrict 5.

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). But most of Roe's claims are federal question claims, not diversity claims. *See* Compl. 20, 25, 27, 30, 32, 34, 35, (counts 1, 4, 5, 7, 8, 9, 10). And pseudonymity, like motions to seal, is a procedural matter of federal law. "Federal law governs motions to seal records in federal court even when a state law addresses the type of records at issue." *Haynes v. Haggerty*, No. 19-CV-00164, 2020 WL 2557230, *5 (D. Vt. May 19, 2020).

Moreover, even if this Court wished to consider the Colorado Supreme Court's practices in deciding on pseudonymity, that would only cut in favor of naming plaintiff: The Office of Presiding Disciplinary Judge's 34-page decision disbarring plaintiff provides her name and findings about her past behavior, and is publicly available online and in the Pacific Reports, 3d.

## Conclusion

Jane Roe should be required to litigate this case in her own name, just as other plaintiffs alleging defamation or challenging state disciplinary action must routinely do. This public access to her name is necessary for the public to be properly informed about the case, and thus to be able to supervise how the judicial system handles the case.

Respectfully Submitted,

s/ Eugene Volokh
*Counsel for Objectors*
Hoover Institution, Stanford University
434 Galvez Mall
Stanford, CA 94305
(650) 721-5092
volokh@stanford.edu
(Affiliation listed for identification purposes only)

January 9, 2025

**Certificate of Service**

I hereby certify that on January 9, 2025, I electronically filed this Objection with the Clerk of Court using the CM/ECF system. I have also e-mailed a copy to jane.roeWY@icloud.com, the e-mail address Roe gives in her Motion for Appointment of Counsel (ECF No. 9).

s/ <u>Eugene Volokh</u>
*Counsel for Objectors*
