IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-03400-STV

JANE ROE,

    Plaintiff,

v.

COLORADO JUSTICE DEPARTMENT, a division of the state of Colorado;
BRIAN BOATRIGHT, individually, and in his official capacity as a Chief Judge of the Colorado Supreme Court;
BYRON LARGE, individually, and in his capacity as a Presiding Disciplinary Judge of the Colorado Supreme Court;
JESSICA YATES, individually, and in her official capacity as Attorney Regulation Counsel of the Colorado Supreme Court;
JACOB VOS, individually, and in his official capacity as Assistant Regulatory Counsel of the Colorado Supreme Court;
RHONDA WHITE MITCHELL, individually, and in her official capacity as Senior Assistant Regulation Counsel of the Colorado Supreme Court; and
CHERYL STEVENS, individually, and in her official capacity as Clerk of the Colorado Supreme Court,

    Defendant(s).

**RESPONSE TO OBJECTION TO MAGISTRATE JUDGE'S ORDER ON MOTION TO PROCEED UNDER PSEUDONYM**

    The Colorado Freedom of Information Coalition and Eugene Volokh timely objected [ECF No. 10] to Roe's motion for Leave to Restrict under D.C.COLO.LCivR 7.2(d) ("Any person may file an objection to the motion to restrict no later than three court business days after posting."). They now respond under Fed. R. Civ. P. 72(a) to Roe's Objection [ECF No. 32] to the April 7, 2025 Magistrate Judge's Order [ECF No. 29] denying her Motion for Leave to Restrict [ECF No. 5].

## Standard of Review

A magistrate judge's order on a non-dispositive matter may only be set aside if it is shown to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72 (a); 28 U.S.C.A. § 636(b)(1)(A). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## Summary of Argument

The Magistrate Judge's decision is not clearly erroneous or contrary to law. Indeed, it is correct.

1. *Coe v. U.S. Dist. Ct. for Dist. of Colorado*, 676 F.2d 411 (10th Cir. 1982), generally concluded that pseudonymous challenges to professional disciplinary proceedings are improper. This is consistent with the broader general principle that parties are expected to litigate in their own names, so that the public can better understand and supervise the behavior of the judicial system. And this is so in constitutional cases as in any other cases. *See* Part I below.

2. Public supervision is especially important in cases such as this one, where the legal and constitutional questions rest on factual questions related to the plaintiff. Plaintiff is claiming that she was mistreated in the attorney disciplinary process—but to evaluate that process one must know her name, so as to find the decision explaining her disbarment and other decisions that provide a perspective on her alleged misbehavior. *See* Part II below.

3. Pseudonymity is especially inappropriate in cases, such as this one, where plaintiff has been accused of vexatious litigation practices. *See* Part III below.

4. Pseudonymity cannot be justified by "economic or professional concerns," *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989), such as

2

the ones to which plaintiff points. This is especially true when Plaintiff's identity and her alleged misconduct have already been publicly disclosed. *Femedeer*, 227 F.3d at 1246. *See* Part IV below.

5. Pseudonymity also cannot be justified by the *Erie* doctrine, because (a) this case is predominantly a federal question case, (b) pseudonymity is a procedural matter rather than a substantive one, and (c) in any event, Colorado practice is to publicly identify attorneys who have been disbarred and the reasons for their disbarment, as occurred in this very case.

**Identity of Objectors**

The Colorado Freedom of Information Coalition (CFOIC) is a nonpartisan alliance of groups, news organizations, and individuals dedicated to ensuring the transparency of state and local governments in Colorado by promoting freedom of the press, open courts, and open access to government records and meetings. The CFOIC represents both individual and institutional members of the press, as well as advocacy groups for freedom of information and freedom of the press, that all work toward ensuring the public is meaningfully informed about the activities of their government, including both state and federal courts in Colorado. A list of some of CFOIC's member organizations can be found at https://coloradofoic.org/about/.

Eugene Volokh is a Professor of Law Emeritus at UCLA School of Law, and a Senior Fellow at the Hoover Institution at Stanford University. He often writes about the legal issues involved in this case—alleged constitutional violations, defamation claims, pseudonymous litigation, and orders aimed at preventing defendants from identifying pseudonymous plaintiffs, see Mot. to Restrict 2 (stating that plaintiff "anticipates moving for a Protective Order later, requesting that Defendants be prohibited from disclosing Plaintiff's true identity and preserving the confidentiality of information"). *See, e.g.*, Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353

(2022); Eugene Volokh, *Media Outlets Forbidden from Identifying Recently Released Drug Cartel Ex-Boss as Plaintiff in Privacy Lawsuit*, Volokh Conspiracy (Reason) (Oct. 12, 2021), https://perma.cc/SS4V-AJAJ; Eugene Volokh, *Court Orders #MeToo Plaintiff Not to Mention Defendant's Name in Public*, Volokh Conspiracy (Reason) (Oct. 11, 2021), https://perma.cc/8Q86-G5PH.

To be able to write effectively about this case, CFOIC members and Volokh need the same sort of broad access that journalists, academics, and ordinary citizens routinely have to most cases—including the ability to identify the parties, to determine what other cases they have been involved in, and to otherwise research their past behavior and credibility.

## Argument

### I. Parties must generally litigate in their own names, including in challenges to professional discipline and in cases alleging constitutional violations

*Coe* largely disposes of Plaintiff's request to proceed under a pseudonym. In that case, this Court concluded that a doctor may not pseudonymously challenge state-run "professional disciplinary proceedings": "It is our view that by balancing the need advanced by [the plaintiff] to maintain individual and professional privacy rights against the right of the public to know all of the facts surrounding the formal proceedings posited with the Board, the privacy interest does not outweigh the public's interest." *Coe*, 676 F.2d at 412, 418. The same logic applies to Plaintiff's attempt to pseudonymously challenge the outcome of her professional disciplinary proceedings.

And this applies to constitutional challenges as much as to other challenges. *Coe* itself involved "claims of constitutional deprivations," *id.* at 413, including "alleged deprivation of due process rights arising under the Fourteenth Amendment to the United States Constitution," *id.* at 412. Likewise, the Tenth Circuit has expressly held that "the public has an important interest in access to

4

legal proceedings, particularly those attacking the constitutionality of popularly enacted legislation." *Femedeer*, 227 F.3d at 1246. The same logic would apply to legal proceedings, such as this one, which attack the constitutionality of judicial action. Indeed, in challenges to government action—including challenges alleging "violation of . . . the Constitution"—"the prejudice to the public interest is clear, should the district court . . . allow[] plaintiff to proceed under a fictitious name. Plaintiff's claim to relief clearly involves the use of public funds, and the public certainly has a valid interest in knowing how state revenues are spent." *M.M. v. Zavaras*, 139 F.3d 798, 799, 803 (10th Cir. 1998).

And these cases dealing with professional discipline and constitutional claims are just applications of the general principle that public access—including the norm of litigating under parties' own names—"allows the citizenry to monitor the functioning of our courts, thereby [e]nsuring quality, honesty and respect for our legal system." *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022) (citation omitted). "Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of the litigants, . . . and disclosing the parties' identities furthers openness of judicial proceedings . . . ." *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (citations omitted).

This right of public access "protects the public's ability to oversee and monitor the workings" of the legal system and "promotes the institutional integrity of the Judicial Branch." *Id.* at 263. This is important to "[p]ublic confidence in the judiciary," which "cannot long be maintained where important judicial decisions are made behind closed doors," "with the record supporting the court's decision sealed from public view." *Id.* (cleaned up).

And such public monitoring and confidence are particularly important when a person is accusing state judicial actors of defamation and discrimination: The need for "[p]ublic confidence in the judiciary," *Public Citizen*, 749 F.3d at 263, is especially strong when a plaintiff alleges malfeasance by the judiciary itself. If a decision against Defendants is rendered "behind closed doors," with details about the plaintiff "sealed from public view," that would understandably increase public skepticism about the fairness of the process. *Id*.

## II. Seeing plaintiff's past cases is necessary to understand the legal and constitutional questions in this case

The value to public supervision of knowing the parties' names is especially clear in this case. Plaintiff's Complaint alleges, among other things, that defendants misbehaved with regard to her disciplinary process, and with regard to restricting Plaintiff from litigating *pro se*. *See, e.g.,* Corrected Amend. Compl. [ECF No. 11-1] ¶¶ 74-78. And, unlike with facial challenges to statutes, Plaintiff's allegations relate specifically to what was done to her, and thus put her credibility squarely at issue. *Cf. Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (concluding that the presumption against pseudonymity is weaker when, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities"); *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 CIV. 6152 VM KNF, 2012 WL 5899331, *9 (S.D.N.Y. Nov. 26, 2012) ("The defendant contends that the public interest in the defendant's identity is atypically weak, because the issues in the case are of a purely legal nature . . . . However, the defendant's contention is erroneous; this is not a case in which the issues are of a purely legal nature, such as in the case of a challenge to the constitutionality of legislation." (cleaned up)). To decide whether the defendants' conduct was unconstitutional, the judiciary needs to consider facts

specific to plaintiff, such as why Plaintiff was disbarred and then forbidden from representing herself in Colorado courts.

Based on Plaintiff's allegations in Corrected Amend. Compl. ¶ 78 ("in February 2024, the Supreme Court issued a decision barring Plaintiff from representing herself in any action in any state court in Colorado"), objectors believe they have identified plaintiff and have found a publicly available decision explaining her disbarment, as well as the February 2024 decision itself and various other decisions involving plaintiff. (They do not cite these decisions here to avoid publicly identifying Plaintiff in the court file before this Court can pass on whether such identification is proper; if the Court prefers, objectors will provide citations to those decisions.) But a fair determination of the relevant constitutional issues requires knowing plaintiff's identity, and not just guessing at it.

**III.   Pseudonymity is especially inapt in cases involving potentially vexatious litigants**

When plaintiff appears to be a potentially "vexatious litigant," "[t]his goes directly to Plaintiff's credibility." *Doe v. Wang*, No. 20-CV-02765-RMR-MEH, 2022 WL 89172, *5 (D. Colo. Jan. 6, 2022). "[T]he public" should not "be prevented from reaching its own conclusions in [the] case," informed by evidence of Plaintiff's possible vexatiousness. *Id.* Because of that, pseudonymity is especially inapt in such cases.

As Plaintiff acknowledges, "in February 2024, the [Colorado] Supreme Court issued a decision barring Plaintiff from representing herself in any action in any state court in Colorado," Corrected Amend. Compl. ¶ 78. That sort of prohibition usually stems from a conclusion that Plaintiff has behaved vexatiously in past cases, and indeed the February 2024 decision labels Plaintiff's behavior in past cases "frivolous" and "vexatious."

7

Moreover, letting Plaintiff proceed pseudonymously here would make it harder for future courts and opposing parties to get a full picture of Plaintiff's pattern of egregious behavior, in considering whether she should likewise be forbidden from litigating in those jurisdictions: "[T]he public's right to know who is filing lawsuits" is important "for tracking vexatious litigants." *Smith v. Corizon Healthcare*, No. 1:16-cv-00461, 2016 WL 3538350, *3 (E.D. Cal. June 28, 2016), *report & recommendation adopted*, 2016 WL 4679712 (E.D. Cal. Sept. 7, 2016); *see also Doe v. Wash. Post Co.*, No. 12-cv-5054, 2012 WL 3641294, *1 n.1 (S.D.N.Y. Aug. 24, 2012) ("The Court cannot but construe the filing of this suit anonymously as an attempt to conceal Fisch's identity as a repeat vexatious filer within this and other districts."), *dismissed sub nom. Doe v. Republic of Poland*, 531 F. App'x 113, 116 (2d Cir. 2013); *Hernandez v. Bishara*, No. 15-cv-8556, 2016 WL 4534009, *1 (C.D. Cal. Aug. 30, 2016) ("Plaintiffs . . . may not seek to evade the vexatious litigant order by using pseudonyms or aliases."); *Nguyen v. Islamic Republic of Iran*, No. 2:21-cv-00134, 2021 WL 4173712, *2 (D. Nev. Sept. 13, 2021) ("To preserve his ability to file these frivolous lawsuits, Plaintiff has demonstrated a willingness to circumvent court-ordered prefiling injunctions through deception, such as by attempting to file cases anonymously as 'John Doe.'"); *Doe v. Law Offices of Andrew Weiss*, No. 19-cv-2119, 2020 WL 5983929, *2 (C.D. Cal. July 30, 2020) (noting "the Court's previous finding that Plaintiff seeks to file under a pseudonym to circumvent an existing pre-filing injunction").

### IV. Risk to reputation does not suffice to justify pseudonymity, especially in cases where plaintiff's identity has already been exposed

For the reasons given above, pseudonymity is allowed only in "exceptional circumstances," *Femedeer*, 227 F.3d at 1246, for instance when the parties are minors, *see, e.g. Doe v. Woodard*, No. 15-cv-01165-KLM, 2015 WL 13848981, *2 (D. Colo. July 20, 2015). But the possibility of

"reputational" harms (including the "risk of retaliation," which presumably refers to professional or economic retaliation," Objection at 3) does not qualify as such an "exceptional circumstance[]," *Femedeer*, 227 F.3d at 1246.

Pseudonymity cannot be justified by "economic or professional concerns." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989). "[F]ear of retaliation by [one's] employer doesn't meet [the] standard" for when pseudonymity is allowed. *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 n.10 (10th Cir. 2017). "That a plaintiff may suffer embarrassment or economic harm is not enough" to justify pseudonymity. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). That is equally true when the economic harm stems from "potential negative scrutiny from future employers." *D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016). And courts have expressly applied this reasoning to cases (such as this one) in which plaintiff alleges defamation:

> The allegations in defamation cases will very frequently involve statements that, if taken to be true, could embarrass plaintiffs or cause them reputation harm. This does not come close to justifying anonymity, however, and plaintiffs regularly litigate defamation claims on the public docket even when the allegedly defamatory statement could, if taken as true, cause them some reputation harm.

*Doe v. Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021); *see also Doe v. Roe*, No. 23-CV-01149-NYW-KLM, 2023 WL 4562543, *3 (D. Colo. July 17, 2023) (rejecting pseudonymity in a defamation case); *Doe v. Wash. Post Co.*, No. 1:19-cv-00477-UNA, 2019 WL 2336597, *1 (D.D.C. Feb. 26, 2019) (likewise); *Roe v. Does 1-11*, No. 20-CV-3788-MKB, 2020 WL 6152174, *6 (E.D.N.Y. Oct 14, 2020) (likewise).

Likewise, plaintiffs suing under Title VII (see Corrected Amend. Compl. 27 [Claim Seven]) also often want to protect their professional reputation and employment prospects by using pseudonyms. For example, an employment discrimination plaintiff who alleges she was improperly fired might prefer to sue pseudonymously, fearing that suing publicly (1) would identify her as a litigious employee, and (2) would air the employer's purported (but, she argues, pretextual) reasons for firing her. Yet despite these quite rational fears, employment discrimination plaintiffs are still required to proceed publicly. *See Southern Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (denying pseudonymity to plaintiffs, partly because they "face no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firm") (quoted favorably in *Coe*, 676 F.2d at 417).

*Femedeer* also disposes of the argument that Plaintiff can justify pseudonymity based on a desire to avoid amplifying the disciplinary decisions that she is challenging. In that case, the court acknowledged "Appellee's interest in attempting to prevent disclosure of his status as a sex offender," 227 F.3d at 1246. Here, Roe is likewise asserting an interest in attempting to prevent disclosure of her status as a disciplined ex-lawyer. But *Femedeer* rejected that interest, because "such disclosure has presumably already occurred in the underlying conviction." *Id.* Here, the findings as to Roe's past misconduct have already occurred in the Office of Presiding Disciplinary Judge's 34-page decision disbarring plaintiff, which provides her name and is available both online and in the Pacific Reports. Here as in *Femedeer*, "the posting of [her] identity and other personal information on the Internet is likely to be more extensive than is the exposure resulting from [her]

10

name on the caption of this lawsuit." *Id.* "Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Id.*

Indeed, the Tenth Circuit "has similarly rejected a plaintiff's argument that, by proceeding under his real name, 'he would incur the very injury against which he is litigating.'" *Luo v. Wang*, 71 F.4th 1289, 1300 (10th Cir. 2023) (quoting *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 812 n.2 (10th Cir. 2006)). "Affirming the denial of plaintiff's request to proceed anonymously, this court stated, 'Preventing disclosure of his identity is not the basis of Raiser's lawsuit. Instead, he seeks monetary compensation for a disclosure that has already occurred.'" *Id.* (quoting *Raiser*, 182 F. App'x 812 n.2). The same applies here. *See* ECF No. 11, at 4 ¶¶ 4-5 (seeking a wide range of possible damages). Here as in *Luo* and *Raiser*, the decision below was correct to "den[y plaintiff's] request to proceed using a pseudonym." *Luo*, 71 F.4th at 1300.

V. **Pseudonymity is a procedural matter, as to which federal courts should rely on federal law**

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). But most of Roe's claims are federal question claims, not diversity claims. *See* Corrected Amend. Compl. 17, 22, 23, 27, 29, 31, 32, 34, 35, 37 (claims 1, 4, 5, 7, 8, 9, 10, 11, 12, 13). And pseudonymity, like motions to seal, is a procedural matter of federal law. "Federal law governs motions to seal records in federal court even when a state law addresses the type of records at issue." *Haynes v. Haggerty*, No. 19-CV-00164, 2020 WL 2557230, *5 (D. Vt. May 19, 2020).

Indeed, the presumption against pseudonymity is embodied in the Federal Rules of Civil Procedure, further making clear that it is procedural for *Erie* purposes: "Rule 10(a) of the Federal Rules of Civil Procedure provides that '. . . In the complaint, the title of the action shall include

11

the names of all the parties . . . .' The Federal Rules thus make no provision for suits by persons using fictitious names or for anonymous plaintiffs." *National Commodity & Barter Ass'n*, *supra*, 886 F.2d at 1245 (citing *Coe*, 676 F.2d at 415). And though "[i]n certain limited circumstances. . . courts have permitted a plaintiff to proceed using a fictitious name," *id.*, that is itself a gloss on the procedural Rule 10(a).

Finally, even if this Court wished to consider the Colorado Supreme Court's practices in deciding on pseudonymity, that would only cut in favor of naming plaintiff: The Office of Presiding Disciplinary Judge's 34-page decision disbarring plaintiff provides her name and findings about her past behavior and is publicly available online and in the Pacific Reports.

## Conclusion

Jane Roe should be required to litigate this case in her own name, just as other plaintiffs alleging constitutional violations or challenging state disciplinary action must routinely do. This public access to her name is necessary for the public to be properly informed about the case, and thus to be able to supervise how the judicial system handles the case.

Respectfully Submitted,

s/ Eugene Volokh
*Counsel for Objectors*
Hoover Institution, Stanford University
434 Galvez Mall
Stanford, CA 94305
(650) 721-5092
volokh@stanford.edu
(Affiliation listed for addressing and identification purposes only)

May 1, 2025

**Certificate of Service**

I hereby certify that on May 1, 2025, I electronically filed this Response with the Clerk of Court using the CM/ECF system. I have also e-mailed a copy to jane.roeWY@icloud.com, the e-mail address Roe gives in her Motion for Appointment of Counsel (ECF No. 9).

s/ Eugene Volokh
*Counsel for Objectors*
